PATRICIA BOWLER,
        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

**DECISION & ORDER**
17-cv-6422-JWF

## Preliminary Statement

Plaintiff Patricia Bowler ("plaintiff" or "Bowler") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for disability insurance benefits ("DIB"). See Compl. (Docket # 1). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Docket ## 9, 12. For the reasons that follow, plaintiff's motion (Docket # 9) is **granted**, the Commissioner's motion (Docket # 12) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

Plaintiff filed her application for DIB on March 31, 2014, alleging disability beginning on November 3, 2012. Administrative Record, Docket # 8 ("AR") at 169, 177. Plaintiff's application for DIB was initially denied on June 9, 2014. AR at 91, 96. Plaintiff appeared at a video hearing before Administrative Law

1

Judge Julia D. Gibbs ("the ALJ") with her attorney, Kevin Bambury, on November 3, 2015. AR at 34. Plaintiff and a vocational expert testified at the hearing. Id.

On February 17, 2016, the ALJ issued an unfavorable decision. AR at 17. At Step Two of the familiar five-step sequential disability determination process, the ALJ determined that plaintiff suffered from the following severe impairments: interstitial cystitis ("IC"), asthma, and irritable bowel syndrome ("IBS"). AR at 22. The ALJ found that none of the impairments met or equaled a listed impairment at Step Three, and, at Step Four, that plaintiff's residual functional capacity ("RFC") allowed her to perform light work either sitting or standing so long as plaintiff could alternate between the two positions every 45 minutes without stopping work activity. AR at 24.

Plaintiff timely filed a request for review by the Appeals Council ("the AC"), which request the AC denied on May 17, 2017, making it the final decision of the Commissioner. AR at 1. Plaintiff then commenced this appeal and filed her motion for judgment on the pleadings on February 7, 2018. Docket # 9. The Commissioner filed its motion for judgment on the pleadings on April 6, 2018 (Docket # 12), and the plaintiff replied on April 23, 2018 (Docket # 13).

For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's

2

decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

## Discussion

As set forth above, the ALJ determined that plaintiff suffers from interstitial cystitis ("IC"). The Commissioner has promulgated specific guidance to be used in evaluating disability claims related to IC. According to Evaluation of Interstitial Cystitis, SSR 02-2P, 2002 WL 32063799 (S.S.A. Nov. 5, 2002):

> IC is a complex, chronic bladder disorder characterized by urinary frequency, urinary urgency, and pelvic pain. IC occurs most frequently in women (about 10 times more often than in men), and sometimes prior to age 18. IC may be associated with other disorders, such as fibromyalgia, chronic fatigue syndrome, allergies, irritable bowel syndrome, inflammatory bowel disease, endometriosis, and vulvodynia (vulvar/vaginal pain). IC also may be associated with systemic lupus erythematosus.

Although symptoms may vary in intensity, the three most common IC symptoms are "an urgent need to urinate (urgency), a frequent need to urinate (frequency), and pain in the bladder and surrounding pelvic region." Id. at *2. The causes of IC are not

3

presently known and "treatments are directed towards relief of symptoms." Id. at *1. An IC sufferer's "response to treatment is variable, and some individuals may have symptoms that are intractable to the current treatments available." Id. The Commissioner's guidance explains that "[t]he pain may range from mild discomfort to extreme distress. The intensity of the pain may increase as the bladder fills and decrease as it empties." Id. at *2. IC may "by itself [be] medically equivalent to a listed impairment." Id. at *5.

The Commissioner's guidance provides detailed instructions on how IC is evaluated in assessing a claimant's RFC:

> IC can cause limitation of function. The functions likely to be limited depend on many factors, including urinary frequency and pain. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It also may affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to tolerate extreme heat, humidity, or hazards also may be affected.
>
> The effects of IC may not be obvious. For example, many people with IC have chronic pelvic pain, which can affect the ability to focus and sustain attention on the task at hand. Nocturia (nighttime urinary frequency) may disrupt sleeping patterns. This can lead to drowsiness and lack of mental clarity during the day. IC also may affect an individual's social functioning. The presence of urinary frequency alone can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night. Consequently, some individuals with IC essentially may confine themselves to their homes. In assessing RFC, we must consider all of the individual's symptoms in deciding how such symptoms may affect functional capacities.

4

> An assessment also should be made of the effect IC has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with IC may have problems with the ability to sustain a function over time.

SSR 02-2P, 2002 WL 32063799, at *5-6. The evaluative guidance further states: "In cases involving IC, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving urinary frequency." Id. at *6.

The record here is replete with references to plaintiff's IC and its effect on her ability to work. Bowler was diagnosed with IC in 2012. She experienced almost all of the symptoms of the disease including bladder pain, urinary tract infections, cramping, and constant, daily incontinence. AR at 40-43, 386, 962, 984. She also experienced pain and burning while urinating. AR at 43, 338. Her IC pain was so severe that she had to make numerous trips to the emergency department to address her IC (AR at 626, 678, 703, 740, 750) and she underwent hydrodistension surgeries wherein the bladder is inflated to look for cracks to help alleviate her symptoms. AR at 42, 207, 383-84, 987. The surgeries provided brief, intermittent periods of relief, but plaintiff testified that she continues to experience prolonged periods of pain and discomfort. AR at 42, 989. Plaintiff testified that she uses the restroom <u>10 to 15 times a day and another four to five times per night</u>. AR at 43. Medication that

5

provides some, but not total, relief makes her so tired she naps two to three times a day for an hour and a half at a time. AR at 44.

Plaintiff's treating physician, Dr. Scott Hartman, corroborated his patient's testimony. In order to assist the ALJ in assessing plaintiff's functional capacity, Dr. Hartman submitted a detailed report. The report, dated May 23, 2014 (AR at 1088) described plaintiff's symptoms and his clinical findings in a way that was not only accordant with plaintiff's hearing testimony, but was <u>remarkably consistent with the specific effects of IC as set forth in the SSR 02-2P</u>. Dr. Hartman noted that plaintiff had been a patient for one year, dating back to the relevant period. AR at 1088. He opined that plaintiff had anxiety, depression, IBS, migraines, and IC resulting in chronic, daily bladder and abdominal pain, dizziness, fatigue, and bladder issues and these symptoms were exacerbated by stress. Id. Dr. Hartman stated that these conditions interfere constantly with plaintiff's attention and concentration such that she is incapable of even low stress jobs. AR at 1089. According to Dr. Hartman, Bowler could only sit or stand for ten minutes at a time for less than two hours in an eight-hour day and she would need to be able to change positions at will and take breaks every 15 minutes for ten minutes at a time. AR at 1089-90. Dr. Hartman indicated that plaintiff's conditions would cause her to be absent from work more

than four times per month and temperature extremes and exposure to dust or fumes would exacerbate her IC and IBS. AR at 1091-92. Importantly, as plaintiff's treating physician, Dr. Hartman never doubted plaintiff's credibility. He found that emotional factors do not contribute to the severity of plaintiff's symptoms and limitations and specifically opined that she was <u>not</u> a malingerer. AR at 1088-89.

The treating physician rule,[1] "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000); <u>see</u> 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources."). The Second Circuit has been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must <u>explicitly</u> consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ <u>must comprehensively set forth [her] reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute [her] own expertise or view

---

[1] This rule was in effect at the time plaintiff's claim was filed.

of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (emphasis added) (internal citations, quotations and alterations omitted). Here, the ALJ failed to follow the treating physician rule because she failed to reference or <u>even acknowledge the existence of the treating physician's opinion</u> in her decision denying plaintiff disability benefits.

There are several reasons why remand is required. First, the ALJ's failure to assess or incorporate the treating physician's opinion or explain her reasons for discounting the opinion constitutes error and such error was not harmless. Had it been considered, Dr. Hartman's opinion certainly would have required that plaintiff be afforded additional limitations not included in the RFC.[2] See Richardson v. Barnhart, 443 F. Supp. 2d 411, 422 (W.D.N.Y. 2006) (concluding that ALJ impermissibly ignored physician's opinion); Roush v. Barnhart, 326 F. Supp. 2d 858, 868-70 (S.D. Ohio 2004) (requiring remand where ALJ did not defer to treating source opinion of plaintiff's IC especially given breadth

---

[2] For example, Dr. Hartman's statements regarding the frequency of plaintiff's bathroom visits should have been included in the RFC. Oddly, elsewhere in the decision, the ALJ seemed to accept that plaintiff "uses the bathroom 10 to 15 times per day and 4 times during the night." AR at 24. But the ALJ never linked this to Dr. Hartman's opinion or adopted any limitation that would account for this serious disruption. Likewise, consistent with Dr. Hartman's opinion, the ALJ should have required that plaintiff's work station be close to a restroom. Either of these additional limitations may have resulted in a finding of disability.

8

and depth of doctor's IC treatment); <u>Gonzalez v. Barnhart</u>, No. 01-CV-7449, 2003 WL 21204448, at *1 (E.D.N.Y. May 21, 2003) ("Because the ALJ either ignored or disregarded the opinion of Gonzalez's treating physician without explanation, the ALJ's determination is reversed and the matter is remanded for reconsideration.").

Second, one would assume that the ALJ would utilize, refer to or, at the very least, acknowledge the existence of the evaluative guidance described above in evaluating plaintiff's IC. The inexplicable failure of the ALJ to discuss or address the Social Security Administration's specific policy and guidance on evaluating IC as set forth in is especially troublesome given this medical record. SSR 02-2p specifically notes that "[t]he effects of IC may not be obvious" and that people with IC may have "chronic pelvic pain" as well as well as nighttime urinary frequency which "may disrupt sleeping patterns" and "lead to drowsiness and lack of mental clarity during the day." SSR 02-2p, 2002 WL 32063799, at *5. SSR 02-2p also cautions that "[t]he presence of urinary frequency alone can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night." <u>Id.</u> It further explains that "[t]he functions likely to be limited depend on many factors, including urinary frequency and pain" and directs the Commissioner to assess "the effect IC has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" especially, "in cases involving urinary

9

frequency." Id. at *5-6. Frankly, based on the record, plaintiff's IC cries out for evaluation under SSR 02-2P. Finally, SSR 02-2P directs the ALJ to consider whether, if appropriate, "IC medically equals a listing." Id. at *4. The ALJ never utilized the guidance in addressing whether plaintiff's IC met or equaled a listing.

Third, the RFC the ALJ assigned to plaintiff was not supported by substantial evidence. The ALJ did not reference or incorporate any of plaintiff's urinary pain or discomfort into the RFC, except to say that plaintiff would be allowed to alternate between sitting and standing.[3] Nor did the ALJ discuss, as SSR 02-2p directs, plaintiff's demonstrated need to use the bathroom multiple times per day or the effect such interruptions would have on plaintiff's ability to perform full-time competitive employment. See Vanover v. Colvin, 627 F. App'x 562, 566 (7th Cir. 2015) (finding that ALJ failed to provide valid explanation for discrediting daily activities of plaintiff with IC); Cruz v. Bowen, 643 F. Supp. 1088,

---

[3] The Commissioner now maintains that the ALJ "accounted for the claimant's bladder pain by limiting her to light work with the option to alternate between sitting and standing every 45 minutes without stopping work activity." AR at 25. This misconstrues the debilitating nature of plaintiff's IC and is contradicted by the ALJ's own reasoning. The ALJ acknowledged that the purpose of this limitation was to account only for plaintiff's "bladder pain." AR at 25. It was therefore not intended to account for plaintiff's need to frequently urinate. Second, such a limitation does not in fact account for Bowler's need to frequently use the restroom. Alternating between standing and sitting does not accommodate plaintiff's need to leave a work station to use the bathroom multiple times per day. And the RFC itself forecloses that plaintiff would be allowed that accommodation because the RFC only permitted plaintiff to change position "without stopping work activity." AR at 24-25.

10

1092 (D. Mass. 1986) (noting that plaintiffs with IC often need to "void" frequently and that ALJ "lack[ed] substantial evidence to conclude that plaintiff's interstitial cystitis will enable him to perform the full range of sedentary work"). In addition, the ALJ did not account how Bowler's frequent urination at night affects her attention span or ability to stay awake during the day, all of which SSR 02-2p asks ALJs to consider when assessing a plaintiff with IC.

In sum, there was substantial evidence in the record demonstrating that plaintiff's IC would severely impact her ability to work and the ALJ failed to properly consider this evidence or incorporate well-documented medical limitations into the RFC she assigned to plaintiff. Remand is required.

### Conclusion

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Docket # 9) is **granted** and the Commissioner's motion for judgment on the pleadings (Docket # 12) is **denied**. The case is remanded for further proceedings consistent with this opinion.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 26, 2019
Rochester, New York